UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TEDD W. ALLEN, )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br>MICHAEL J. ASTRUE, Commissioner of the )<br>Social Security Administration, )<br> )<br> Defendant. ) | Case No. C10-776-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Tedd W. Allen, seeks review of the denial of his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") by the Commissioner of the Social Security Administration, after a hearing before an administrative law judge ("ALJ").

Allen contends that the ALJ erred by: 1) giving greater evidentiary weight to the opinions of two non-examining, non-treating psychologists than the opinions of an examining psychiatrist and two examining psychologists; 2) excluding Allen's diagnosed learning disorder as a severe impairment at step two; 3) failing to develop the record concerning Allen's diagnosis of a learning disorder; and 4) relying on the Medical-Vocational Guidelines (grids) at step five instead of seeking the testimony of a vocational expert regarding Allen's severe non-exertional impairments.  Dkt. 15.  For the reasons set forth below the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

REPORT AND RECOMMENDATION- 1

## I.   FACTUAL AND PROCEDURAL HISTORY

Allen is currently 46 years old (Tr. 111). He is a high school graduate (Tr. 59) and has past work experience as an outdoor maintenance worker. Tr. 136. On June 28, 2006, he applied for DIB and SSI, alleging disability as of December 15, 2004. Dkt. 15. His application was denied initially and on reconsideration. Tr. 83-86, 88-91. After a hearing conducted on March 17, 2009, the ALJ issued a decision on April 19, 2009 finding Allen not disabled. Tr. 36-55. The Appeals Council denied Allen's request for review, making the ALJ's decision the final decision of the commissioner. Tr. 31-33.

## II.   THE ALJ'S DECISION

Applying the five-step sequential evaluation process for determining whether a claimant is disabled,[1] the ALJ found at step one that Allen had not engaged in substantial gainful activity since the alleged onset date. Tr. 41.

At step two, the ALJ found Allen had the following severe impairments: double vision on extreme gaze, major depressive disorder, asthma, cognitive disorder, and substance abuse disorder (excessive alcohol consumption). *Id*.

At step three, the ALJ found Allen's impairments did not meet or equal the requirements of a listed impairment.[2]

Before proceeding to step four, the ALJ found Allen had the residual functional capacity ("RFC") to perform work at all exertional levels. Tr. 45.

At step four, the ALJ found Allen could not perform his past work because of exposure to dust and fumes. Tr. 51.

Considering Allen's age, education, work experience, and RFC, the ALJ found at step five

---

[1] 20 C.F.R. §§.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION- 2

that jobs exist in significant numbers in the national economy he can perform, and Allen was thus not under disability from December 15, 2004, through the date of the decision. Tr. 52-55.

### III.   STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

### IV.   DISCUSSION

**A.   Weight of the Medical Evidence**

Allen argues that the ALJ erred when he gave considerable or significant evidentiary weight to the opinions of two non-examining consulting psychologists while giving lesser weight to the opinions of an examining psychiatrist and two examining psychologists. Dkt. 15 at 9. The Commissioner argues that the Court should defer to the ALJ's interpretation of conflicting medical testimony because the ALJ provided legitimate reasons for the weight given to each doctor's opinion. Dkt. 16 at 5.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected

REPORT AND RECOMMENDATION- 3

1  only for "clear and convincing reasons." *Id.* at 830-31.  Where contradicted, a treating or
2  examining physician's opinion may not be rejected without "specific and legitimate reasons" that
3  are supported by substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*,
4  722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough
5  summary of the facts and conflicting evidence, stating his interpretation of the facts and
6  evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

7 **1. Examining Psychiatrist, Anselm Parlatore, M.D.**

8  Dr. Parlatore conducted a psychiatric evaluation of Allen on October 13, 2006 at the
9  request of DDS.  Tr. 276-80.  Dr. Parlatore reviewed Allen's medical records including the
10 records from his gunshot wound, and conducted a Mental Status Exam.  *Id.*  Dr. Parlatore
11 determined Allen suffered from the following: a mood disorder due to general medical condition
12 (the condition in Allen's case being "the ravishes and sequelae of a gunshot wound to the head");
13 a cognitive disorder; alcohol abuse; and an academic learning disorder.  Tr. 279.  He noted that
14 Allen was slurring his speech and may have smelled of alcohol, but did not appear drunk.  Tr.
15 278.  Dr. Parlatore determined Allen had "affective instability" related to his neurological
16 deficits.  Tr. 279.  He further opined Allen had a persistent alcohol problem and preexisting
17 learning disorder with cognitive disorder that may be related in part to his learning disorder and
18 his gunshot wound.  Tr. 279.  Based on these findings, Dr. Parlatore opined that Allen was
19 "moderately to markedly impaired in terms of stress, focus, concentration, pace and persistence,"
20 and that he was "moderately to markedly impaired in terms of his ability to carry out specific
21 tasks in a timely and consistent manner" and "moderately to markedly impaired [in] his
22 interaction with others."  Tr. 279.

23  The ALJ gave less weight to Dr. Parlatore's opinion because, in the ALJ's opinion, Dr.

REPORT AND RECOMMENDATION- 4

Parlatore was "improperly influenced by claimant's inaccurate claim of traumatic brain injury." Tr. 44.  The ALJ further held that there was no evidence of brain injury, brain damage or learning disability in the medical evidence of record and thus rejected Dr. Parlatore's opinion.  Tr. 44.  The ALJ found that Dr. Parlatore's opinion of Allen's limitations in social functioning had "virtually no support in the record" except Allen's subjective complaints.  Tr. 49.  The ALJ took issue with the fact that Allen's speech was slurred during Dr. Parlatore's exam, which, the ALJ held was caused by "other impairments" and thus shed doubt on the accuracy of Dr. Parlatore's assessment of Allen's longitudinal functioning.  Tr. 50.

To the extent Dr. Parlatore's opinion is in conflict with Dr. Reade's opinion, the ALJ has not given "specific and legitimate reasons" for rejecting Dr. Parlatore's opinion.  First, nowhere in Dr. Parlatore's opinion does it state that he is relying on Allen's claim of a traumatic brain injury.  *See* Tr. 276-79.  Dr. Parlatore, an M.D., reviewed the records pertaining to Allen's gunshot wound in rendering his determination that the injury may be related to Allen's other limitations.  *Id.*  Second, while Dr. Parlatore expressed that Allen may have smelled of alcohol and had slurred speech, he did not believe Allen was intoxicated at the exam.  Tr. 278.  The Court also notes that Allen told Dr. Parlatore that he had been drinking the night before the exam.  Tr. 277.  It is utterly illogical that a trained psychiatrist would conduct an evaluation at the request of DDS and render a medical opinion if he believed the examinee was intoxicated at the time of the exam.  The ALJ thus failed to give legitimate reasons for discounting Dr. Parlatore's opinion.

**2.     Examining Psychologist, Dr. Uhl**

The ALJ similarly rejected portions of Dr. Uhl's opinion.  In January of 2007, Dr. Uhl, an examining psychologist, performed a psychological evaluation, MSE and MMPI-2 testing on

REPORT AND RECOMMENDATION- 5

Allen. Tr. 304-14. Dr. Uhl diagnosed Allen with alcohol abuse in remission and a learning disorder NOS. Tr. 305. Dr. Uhl further observed, "This man was very limited cognitively before his suicide attempt. After shooting himself in the head, he is now very limited and has very little patience, is prone to irritation and suffers hourly mood swings." Tr. 306. Based upon the MMPI-2 results, Dr. Uhl opined, "I'm sure he sustained brain damage when he shot himself in the head in a suicide attempt. Recommend a full neuro-psychological assessment or at least a WAIS-III to determine his cognitive abilities." Tr. 313. Again, the ALJ rejected Dr. Uhl's opinion because he thought Dr. Uhl was "influenced by the claimant's inaccurate claim of traumatic brain injury." Tr. 44. In discrediting Dr. Uhl's report, the ALJ noted places in the report he felt were based on Allen's subjective complaints, concluding that Dr. Uhl's assessment of brain damage was also based upon Allen's claims that he suffered brain damage from the gunshot wound. Tr. 50. However, nowhere in Dr. Uhl's report did he indicate Allen told him he had a traumatic brain injury, and his diagnosis of brain damage seems to be based upon the tests conducted, not upon any subjective reports by Allen. Tr. 304-14. There is no evidence in the record to indicate Allen told Dr. Uhl he had a traumatic brain injury. The ALJ thus failed to give legitimate reasons for rejecting Dr. Uhl's opinion.

### 3. **Examining Psychologist, Dr. Thorpe**

In January 2008, Dr. Thorpe evaluated Allen and conducted a WAIS-III assessment. Tr. 373-81. The ALJ discredited Dr. Thorpe's opinion because he thought she was influenced by Allen's claim of a brain injury. Tr. 44. The ALJ also discounted Dr. Thorpe's opinion because she completed a "check-the-box" form created by DSHS, although he noted she did provide some explanation for the boxes checked. Tr. 50-51. Again, there is no indication in Dr. Thorpe's evaluation that Allen told her he had a brain injury. *See* Tr. 373-81. Dr. Thorpe's

REPORT AND RECOMMENDATION- 6

report seems to indicate a clear understanding of Allen's gunshot wound as he relayed to her that he shot himself damaging his teeth and that part of the bullet was still stuck behind his eye. Tr. 377. The ALJ, based upon the form used by Dr. Thorpe, rejected Dr. Thorpe's assessments regarding social functioning, stating that the form raised the issue of a claimant's ability to work, and thus the doctor was making a determination reserved to the commissioner. Tr. 51. The Court does not find these issues to be legitimate reasons to reject Dr. Thorpe's findings. Dr. Thorpe's determinations are based upon her observations, clinical interview, MSE and WAIS-III exams performed during her face-to-face evaluation of Allen. Tr. 373-81. The ALJ thus failed to give legitimate reasons for rejecting Dr. Thorpe's findings.

### 4. Non-Examining Doctors

In general, the opinions of treating and examining doctors are given greater weight than the opinions of non-examining doctors. *Lester*, 81 F.3d at 830. After discounting the opinions of the above-discussed examining doctors, the ALJ accorded the opinions of two non-examining, non-treating doctors "considerable weight." Tr. 45. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As discussed below, the Court finds Dr. Reade's opinion (and Dr. Peterson's concurring opinion) are not consistent with other independent evidence in the record.

The ALJ stated that his findings were "consistent with the opinion of the state agency medical consultants with the Washington State Disability Determination Service (DDS), who reviewed the record in connection with the initial stages and found the above limitations in the claimant's mental health functioning." Tr. 45. This statement is inaccurate. The ALJ's findings

REPORT AND RECOMMENDATION- 7

are not, in fact, consistent with the opinions of Dr. Reade and Dr. Peterson.  Dr. Reade determined upon reviewing Dr. Parlatore's report, "The [diagnosis] of a cognitive disorder is not supported, as there was no brain involvement from the [gunshot wound]."  Tr. 283.  Dr. Peterson affirmed Dr. Reade without rendering a separate opinion.  Tr. 360.  Dr. Reade further opined "other medical evidence makes no mention of cognitive deficits."  Tr. 283.  However, the ALJ determined that Allen suffers from "Some form of longstanding cognitive impairment" (Tr. 43) and ultimately determined that a cognitive disorder was among Allen's severe impairments at step two.  Tr. 41.  The record indicates that only Dr. Parlatore made an official diagnosis of cognitive disorder NOS (Tr. 279), but, as previously discussed, Dr. Thorpe also identified borderline intellectual functioning (Tr. 373) and Dr. Uhl similarly identified Allen's limited cognitive abilities.  Tr. 306.  The ALJ did not give controlling weight to these opinions.  Instead the ALJ gave substantial weight to Dr. Reade's report—a report that is in conflict with substantial evidence in the record as well as the ALJ's own findings.  *See* Tr. 41.

The Court thus concludes the ALJ improperly weighed the medical evidence in reaching his determinations regarding Allen, and this error affected the remainder of the ALJ's analysis.  On remand, the ALJ must re-evaluate the medical evidence.  *See Lester*, 81 F.3d at 830-31; 20 C.F.R. § 404.1527(d)(1).  The case is remanded for re-evaluation with appropriate weight to be given to the reports of the examining doctors and with leave to further develop the record if necessary.

**B.    Learning Disorder as a Severe Impairment**

Allen argues the ALJ erred at step two by failing to find a learning disorder as one of his severe impairments.  Dkt. 15 at 15-17.  The Commissioner counters that the ALJ properly determined Allen's severe impairments and Allen failed to meet his burden of proof, failing

REPORT AND RECOMMENDATION- 8

disclose any credible evidence of how he was significantly limited by a learning disorder. Dkt. 16 at 12-15. The Commissioner further argues that to the extent the ALJ erred at step two in identifying a learning disorder among Allen's severe impairments, such error was harmless. Dkt. 16 at 15.

At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The claimant bears the burden of showing a medically determinable severe impairment. *Bowen*, 482 U.S. at 146 & n.5.

An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c), 404.1521(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

Dr. Parlatore diagnosed Allen with a preexisting learning disorder with cognitive disorder and determined the condition may also be related to Allen's gunshot wound. Tr. 279. Dr. Uhl also diagnosed Allen with a learning disorder in his January 2007 psychological evaluation (Tr. 305) and recommended that WAIS-III testing be performed. Tr. 313. Dr. Thorpe performed the

REPORT AND RECOMMENDATION- 9

WAIS-III to test Allen's cognitive abilities, and his performance indicated that he was within borderline intellectual range, scoring in the sixth percentile for adult intelligence. Tr. 380. Dr. Thorpe opined that Allen was well below average in his ability to understand and use verbal concepts, was easily "mixed up," had difficulty dealing with complex information, did not notice his errors in complex tasks, and had a much slower than average work speed. Tr. 380. Records from Whatcom Counseling and Psychiatric Clinic, the counseling center which has provided some ongoing counseling for Allen also indicate Allen has borderline intellectual functioning, (Tr. 467), records the ALJ credited in his findings. Tr. 43.

The ALJ determined, based on substantial evidence in the record, Allen has a longstanding cognitive disorder among his severe impairments (Tr. 42), but no learning disorder. The ALJ rejected the learning disorder as a severe impairment in part because Allen had not alleged cognitive problems when he applied for benefits. Tr. 44. This reasoning is specious in light of the fact that the ALJ found a cognitive disorder among Allen's severe impairments. The ALJ cited the fact Allen attended special education classes for the duration of his education as a basis for finding Allen suffered from a cognitive disorder (Tr. 43), but it seems this evidence could also reasonably support the finding of a learning disorder.

As discussed above, the Court holds that the ALJ improperly weighed the medical evidence and this error affected the rest of the ALJ's analysis. Based on the foregoing there is still a question as to whether a learning disorder significantly limits Allen's ability to work. The ALJ is directed to re-conduct the step two analysis on remand and specifically to re-examine whether a learning disorder is among Allen's severe impairments at step two.

**C.     ALJ's Duty to Develop the Record**

Allen argues the ALJ failed to sufficiently develop the record regarding the learning

REPORT AND RECOMMENDATION- 10

disorder and that he should have obtained an evaluation of Allen's learning disorder. Dkt. 15 at 17-18. Citing *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001), the Commissioner counters that the ALJ's duty to develop the record was not triggered because the ALJ discredited the portions of the record which contained ambiguous evidence of a learning disability. Dkt. 16 at 15-16. The Commissioner thus argues no credible evidence of a learning disability remains in the record.

Dr. Parlatore diagnosed Allen with a learning disorder. Tr. 279. He further opined that Allen was markedly impaired in terms of stress, focus, concentration, pace and persistence, as well as moderately to markedly impaired as to his intellectual capacity to understand, remember, and his ability to carry out specific tasks in a timely and consistent manner. Tr. 279. Whether these impairments are due to a cognitive disorder, a learning disorder, or both, is ambiguous. Dr. Uhl diagnosed a learning disorder (Tr. 305) and also believed that Allen sustained brain damage from the gunshot wound (Tr. 313). Further, Dr. Uhl recommended a full neuro-psychological assessment be performed (Tr. 313), and this testing was not conducted. As discussed above, the medical evidence must be re-evaluated. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan*, 242 F.3d at 1150 (citing *Smolen*, 80 F.3d at 1288). The Court finds the ALJ's duty to develop the record may be triggered on remand because the record may be ambiguous and require further supplementation as to Allen's learning disability.

**D.  Step 5 – Use of the Grids**

At step five, the burden of production shifts to the Commissioner to produce evidence other work exists in significant numbers in the national economy which a claimant could

REPORT AND RECOMMENDATION- 11

perform in light of his age, education, work experience, and RFC. 20 C.F.R. § 416.920(e); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689-90 (9th Cir. 2009). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. The Commissioner may meet this burden by referencing the grids, or by using the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The grids are matrix of factors—physical ability, age, education and work experience—that create rules for identifying whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). Where the grids match a claimant's qualifications, they direct a finding of either disabled or not disabled. *See Id.* Where the grids do not match a claimant's qualifications exactly, the ALJ can either use the grids as a framework to determine whether work exists that the claimant can perform, or, if the claimant has significant non-exertional limitations, the ALJ may rely on a VE's opinion. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The grids provide for evaluation of claimants with both exertional and non-exertional limitations. *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986). However, the grids are inapplicable when a claimant's non-exertional limitations are "'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.'" *Hoopai*, 499 F.3d at 1075 (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal quotation marks omitted)). In such a case, VE testimony is required. *Id.*

Allen argues the ALJ erred at step five by relying on the grids instead of soliciting the testimony of a VE. Dkt. 15 at 19. The Commissioner counters that VE testimony was unnecessary because the ALJ did not find, and Allen failed to show, that he had non-exertional

REPORT AND RECOMMENDATION- 12

1  limitations due to his impairments which significantly limited the number of unskilled jobs he
2  could do.  Dkt. 16 at 19.  At step five, the ALJ determined Allen had no exertional limitations,
3  but some environmental restrictions due to asthma.  Tr. 52.  The ALJ further determined that
4  Allen's vision impairment due to the gunshot wound did not significantly erode the occupational
5  base of heavy or very heavy work he deemed Allen capable to perform.  Tr. 53.

6        Citing *Hoopai*,[3] the ALJ concluded Allen's mental limitations also did not unduly reduce
7  his capacity to perform gainful activity.  The ALJ asserts, based on *Hoopai*, that certain non-
8  exertional limitations are not sufficiently severe to warrant VE testimony.  Tr. 53.  The Courts
9  finds the holding in *Hoopai* does not extend so far.  In *Hoopai*, the ALJ omitted non-exertional
10 limitations from the RFC assessment despite evidence of limitations in concentration, persistence
11 and pace.  *Hoopai,* 499 F.3d at 1075.  The claimant did not contest the RFC assessment, but
12 argued the ALJ's step two finding of depression was itself a significant non-exertional limitation
13 requiring testimony from a vocational expert at step five instead of exclusive use of the grids.  *Id*.
14 The *Hoopai* court held a step two determination that a condition is severe does not necessarily
15 require the ALJ take the testimony of a vocational expert at step five.  *Id*. at 1076.   *Hoopai* thus
16 does not stand for the proposition asserted by the ALJ in his opinion.  *See* Tr. 53.  Further, the
17 *Hoopai* court limited its holding by stating, "we hold that *in this case*, substantial evidence
18 supports the ALJ's conclusion . . . ."  *Hoopai,* 499 F.3d at 1077 (emphasis added).  To the extent
19 that the *Hoopai* court limited its holding to the facts of that case based on the substantial
20 evidence presented, *Hoopai* further fails to support the ALJ's reasoning in Allen's case.  To the
21 contrary, the Social Security Administration has ruled that some mental impairments such as
22 depression can effect exertional capacity.  SSR 83-14, 1983 WL 31254 at *2.  Further, where a
23

---

[3] 499 F.3d 1071, 1076 (9th Cir. 2007).

REPORT AND RECOMMENDATION- 13

claimant has no exertional impairments, but does suffer from mental impairments, "the potential occupational base would be reduced by his . . . inability to perform certain complexities or particular kinds of work. These limitations would affect the occupational base in various ways." SSR 85-15, 1985 WL 56857 at *5. Allen has limitations due to asthma and vision impairments and logically these conditions may erode the occupational base. *See* SSR 83-14, 1983 WL 31254 at *2. He also suffers from mental impairments including depression and a cognitive disorder that further erode the occupational base. *Id.* Due to errors in the evaluation of the medical evidence, the extent of Allen's mental impairments and their effect on Allen's ability to work is not fully known at this time.

On remand, the medical evidence must be properly weighed and the case must be reevaluated, including the step five inquiry. Although the testimony of a VE is not required in all cases, including those with non-extertional impairments, VE testimony may be necessary in more complex situations. SSR 83-14, 1983 WL 31254 at *4. Whether VE testimony is required in Allen's case is left to the discretion of the ALJ on remand.

**E.     Remand and Reassignment**

Remand is appropriate where additional administrative proceedings could remedy defects. *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985) (citing *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984)). After reviewing the arguments presented and the balance of the record, the Court finds the matter should be remanded for further proceedings. Allen urges the Court to remand the case for payment of benefits (Dkt. 15 at 20), however outstanding issues in the case, such as the extent of Allen's mental limitations and whether a learning disability is one of his severe impairments, require determination though further administrative proceedings.

The ALJ has a special duty to fully and fairly develop the record and to assure that the

REPORT AND RECOMMENDATION- 14

1  claimant's interests are considered.  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).   The

2  Court recommends that the Commissioner assign Allen's case to a different ALJ on remand.

3                      V.        **CONCLUSION**

4        For the foregoing reasons, the Court recommends that the Commissioner's decision be

5  **REVERSED** and the case be **REMANDED** for further administrative proceedings.

6        On remand, the ALJ should re-evaluate the medical evidence, re-determine whether a

7  learning disability should be included among Allen's severe impairments at step two, further

8  develop the record if necessary regarding Allen's learning disability, and re-conduct the step five

9  inquiry with testimony from a VE if necessary.  A proposed order accompanies this Report and

10  Recommendation.

11        DATED this 19th day of November, 2010.

                                                                BRIAN A. TSUCHIDA
                                                                United States Magistrate Judge